**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

William Raphael,

    Plaintiff,

v.

Marcos Gomez, et al.,

    Defendants.

Case No. 2:25-cv-01338-NJK[1]

**Order**

[Docket No. 29]

Pending before the Court is Defendants' motion for summary judgment. Docket No. 29. Plaintiff filed a response in opposition. Docket No. 33.[2] Defendants filed a reply. Docket No. 35.[3] The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the Court **GRANTS** the motion for summary judgment with respect to Plaintiff's federal claim.

**I.     Background**

This is a civil rights case arising out of Plaintiff's arrest for suspicion of driving under the influence. *See* Docket No. 15 (second amended complaint). Plaintiff brings a claim for violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983. *Id.* at ¶¶ 62-65. Plaintiff also brings state law tort claims for false imprisonment and false arrest pursuant to the Court's supplemental jurisdiction. *See id.* at ¶¶ 66-75. The undisputed facts are as follows.

Shortly after 2:00 a.m. on June 24, 2023, Las Vegas Metropolitan Police Department Officers Marcos Gomez and Jennifer Barron were on patrol, at which time they saw that Plaintiff's

---

[1] This case is referred to the undersigned magistrate judge on party consent. *See* Docket Nos. 3, 4.

[2] The Court liberally construes the filings of *pro se* litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] The pagination native to the filings diverges from the pagination assigned by CMECF. The Court pin-cites herein to the latter.

license plate was not properly illuminated. Exhibit C at 9:07.[4] Officer Gomez activated his police lights and siren, and Plaintiff pulled his car over. *Id.* at 9:07-9:08.

Officer Gomez approached Plaintiff's car. *Id.* at 9:08. During the ensuing interaction, Plaintiff could not locate his driver's license for roughly 90 seconds despite it being on his lap, Officer Gomez had to ask Plaintiff three times for his registration, Plaintiff's eyes were sleepy, glassy, and bloodshot, and Plaintiff displayed a blank stare. *See id.* at 9:08-9:12. Plaintiff consented to field sobriety tests, though Plaintiff said that he does not drink or smoke and that his behavior stemmed from his nervousness in dealing with the police in general. *Id.* at 9:12. Officer Gomez conducted six tests. First, Officer Gomez conducted a Horizontal Gaze Nystagmus Test. *Id.* at 9:13-9:16. He reported that the test showed a lack of smooth pursuit on both eyes, distinct and sustained nystagmus at maximum deviation in both eyes, and onset of nystagmus prior to 45 degrees in both eyes. Docket No. 29-1 at 5. Second, Officer Gomez conducted a walk-and-turn test. Exhibit C at 9:16-9:19. He reported that Plaintiff stepped out of position once, raised his hands more than six inches from his body, stopped after nine steps, and did not perform the turn as demonstrated. Docket No. 29-1 at 5. Third, Officer Gomez conducted a one leg stand. Exhibit C at 9:20-9:21. He reported that Plaintiff performed this test satisfactorily. Docket No. 29-1 at 5. Fourth, Officer Gomez conducted a finger-to-nose test. Exhibit C at 9:22-9:24. He reported that Plaintiff failed to touch the tip of his finger to the tip of his nose and that he forgot the instruction to bring down his finger from his nose. Docket No. 29-1 at 5. Fifth, Officer Gomez conducted a Romberg balance test. Exhibit C at 9:24-9:25. He reported that Plaintiff counted to 30 seconds in what was actually 34 seconds, which he indicated shows a slow internal clock. Docket No. 29-1 at 5. He reported that Plaintiff's body had a front-to-back sway, but that eyelid tremors and body tremors were not present. *Id.* Sixth, Officer Gomez conducted a lack of convergence test. Exhibit C at 9:26. He reported that lack of convergence was present. Docket No. 29-1 at 5. Following the field sobriety tests, Officer Gomez arrested Plaintiff. Exhibit C at 9:27.

---

[4] Exhibit C is the officer's body-worn camera footage of the incident, which Defendants submitted manually. *See* Docket No. 31. The Court pin-cites herein to that footage based on the Coordinated Universal Time stamp provided therein.

Officer Gomez searched Plaintiff and found no alcohol or drugs. *See* Docket No. 33 at 35. Officer Gomez searched Plaintiff's vehicle and found no alcohol or drugs, or related paraphernalia. *See id.* at 36-37. Plaintiff consented to a blood draw, Exhibit C at 9:28, and the toxicology results weeks later showed no alcohol or drugs in Plaintiff's system. *See* Docket No. 33 at 62-66. The charges against Plaintiff were dismissed. *See id.* at 71.

## II.    Standards

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiff bears the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiff's case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250-51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

3

**III.    Analysis**

Plaintiff's operative complaint brings three claims against Defendants:  a federal Section 1983 claim for unlawful search and seizure, and state tort claims for false imprisonment and false arrest.  The Court address the federal claim first, followed by the state law claims.

    A.    <u>Section 1983 Claim for Unlawful Search and Seizure</u>

        1.    Officer Barron's Lack of Personal Participation

Officer Barron seeks summary judgment based on a lack of personal participation in the alleged constitutional violation.  Docket No. 29 at 29-30.  It is well-settled law that a defendant can be liable under § 1983 "only upon a showing of personal participation" in the alleged constitutional violation.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  An officer merely "watching others violate the Constitution" or "being present at the scene" is insufficient to demonstrate that officer's liability.  *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022); *see also Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (the defendant must be more than a "mere bystander").  In order to establish potential liability, a plaintiff must show at a minimum that (1) the officer knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the officer set in motion a series of acts by others which the officer knew or reasonably should have known would cause others to inflict the constitutional injury.  *See Peck*, 51 F.4th at 889.  "Helpful to this analysis are the standards of causation under tort law."  *Reynaga Hernandez*, 969 F.3d at 941.

In this case, Plaintiff's evidence is almost exclusively related to Officer Gomez.  In the pending motion, Officer Barron points to a lack of evidence of her involvement in the decisions to administer field sobriety tests and to arrest Plaintiff thereafter.  Docket No. 29 at 29-30.  Plaintiff's interrogatory response confirms that Officer Barron did not participate in his sobriety testing or arrest, but indicates instead that she observed the process.  *See* Docket No. 29-9 at 17 (response to interrogatory no. 14).  Plaintiff also acknowledges that Officer Barron's role was not "illegal" and that she did not "spearhead the arrest."  *Id.*  Plaintiff proffers evidence only that Officer Barron asked Officer Gomez "[h]ow were his eyes?" and Officer Gomez responded that Plaintiff "had nystagmus, [and] bloodshot watery" eyes.  Docket No. 33 at 3.  The facts that Officer Barron was

4

physically present and asked this question fail to create material issues of fact that she personally participated in any constitutional violation, that she knew about and acquiesced in a common plan to violate Plaintiff's constitutional rights, or that she set in motion any actions that violated Plaintiff's constitutional rights.

Officer Barron is entitled to summary judgment on Plaintiff's Section 1983 claim.

### 2. Officer Gomez's Probable Cause

Officer Gomez seeks summary judgment on the claim that he violated Plaintiff's Fourth Amendment rights by unlawfully arresting him, arguing that there is no dispute of material fact that the circumstances sufficed to establish probable cause. *See, e.g.*, Docket No. 29 at 24-25.[5] Plaintiff counters that there are disputes of material facts warranting a trial based on his protestations of innocence during the investigation, his innocent explanation for some of the circumstances, inadequacies in the field testing, and the subsequent toxicology results. *See* Docket No. 33 at 2-8. Officer Gomez has the better arguments.

"In the context of a Section 1983 action, probable cause to arrest exists when there is a fair probability or substantial chance of criminal activity by the arrestee based on the totality of the circumstances known to the officers at the time of arrest." *Miller v. City of Scottsdale*, 88 F.4th 800, 804 (9th Cir. 2023) (cleaned up). This "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up). In analyzing whether there is a material issue of fact as to probable cause, it is helpful to also recognize the issues on which the inquiry does <u>not</u> turn. The fact that a plaintiff was ultimately determined to not be guilty—or that the charges against him were dismissed—does not establish that probable cause was lacking to arrest him. *Miller*, 88 F.4th at 805 (explaining that the probable cause inquiry does not turn on "whether there was a violation in fact"). Similarly, neither a plaintiff's protestation of innocence to the officer nor the potential of innocent explanations for the officer's observations renders probable cause

---

[5] The undisputed facts establish that there was reasonable suspicion to initiate the traffic stop. *See* Docket No. 29-9 at 10 (response to interrogatory no. 12 acknowledging non-functioning license plate light); *see also United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) ("A traffic violation alone is sufficient to establish reasonable suspicion").

lacking. *District of Columbia v. Wesby*, 583 U.S. 48, 61-62 (2018) ("probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts" or to credit the suspects' protestations of innocence); *see also, e.g.*, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (stating that once probable cause is established, officers do not have a duty to investigate further for exculpatory evidence)

Turning to the circumstances of this case, the undisputed facts establish that Plaintiff displayed nervousness in interacting with Officer Gomez, that Plaintiff could not locate his driver's license for roughly 90 seconds despite it being on his lap, that Officer Gomez had to ask Plaintiff three times for his registration, that Plaintiff's eyes were sleepy, glassy, and bloodshot, and that Plaintiff displayed a blank stare during this encounter. *See* Exhibit C at 9:08-9:12. In addition, it is undisputed that Officer Gomez's field sobriety testing provided indicators of impairment. As an example, during the finger-to-nose test, Plaintiff was instructed to touch the tip of his nose and then "bring [his hand] right back down" after each touch. *Id.* at 9:22. Nonetheless, Plaintiff kept his finger on his nose for nearly a minute on the first touch and, even after further instruction, kept his fingers on his nose for several seconds in the subsequent touches. *See id.* at 9:22-9:24. In addition, Plaintiff was instructed specifically to touch his nose only with his fingertip, not his finger pad or any other part of his finger, *see id.* at 9:22, but Plaintiff repeatedly touched his nose with his finger pad, *see id.* at 9:22-9:24. Plaintiff similarly failed to recall and comply with the instructions on the walk-and-turn test. *See id.* at 9:18-9:19. Plaintiff also had a roughly four-second variance during the Romberg test, in which he counted to 30 in more than 34 seconds. *See id.* at 9:25. These undisputed facts taken in totality establish probable cause for Officer Gomez to arrest Plaintiff for driving under the influence of alcohol or drugs.

Moreover, Plaintiff's counter arguments fail to show a dispute of material issue of fact. Plaintiff relies heavily on the fact that he proclaimed his sobriety during this process and that there could be innocent explanations for Officer Gomez's observations. As to the latter, Plaintiff explains that he gets nervous around the police generally and his nervous behavior during the stop was not related to alcohol or drug use. *See, e.g.*, Docket No. 33 at 11. Plaintiff also explains that the observed circumstances could have been caused by health issues, as opposed to inebriation.

*See, e.g., id.* at 14.  The United States Supreme Court has rejected these types of reasoning as a basis to deny summary judgment as to probable cause.  *Wesby*, 583 U.S. at 61-62.  Plaintiff also relies on the fact that the toxicology reports, available weeks after his arrest, showed no alcohol or drugs in his system.  *See* Docket No. 33 at 63-64.  While those results may have informed the prosecutor's decision of whether to drop the charges against Plaintiff, they do not show that the circumstances known to Officer Gomez <u>at the time of the arrest</u> were insufficient to establish probable cause.  *See Miller*, 88 F.4th at 804.  Lastly, Plaintiff argues that the field sobriety tests failed to show "conclusively" that he was impaired.  *See* Docket No. 33 at 7.[6]  The question before the Court is not, however, whether Officer Gomez possessed evidence of conclusive guilt; it is only whether there was "a fair probability or substantial chance of criminal activity," *Miller*, 88 F.4th at 804, which "is not a high bar," *Kaley*, 571 U.S. at 338.

Officer Gomez is entitled to summary judgment on Plaintiff's Section 1983 claim.[7]

### B.      State Law Claims

Having determined that Defendants are entitled to summary judgment with respect to Plaintiff's federal claim, the Court lacks original jurisdiction over the remaining state law claims for false arrest and false imprisonment.  Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction."  Typically, "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed."  *Religious Tech. Ctr v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992).  Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

---

[6] Plaintiff also argues that Officer Gomez performed part of the HGN test improperly, *see, e.g.*, Docket No. 33 at 3 ("Gomez did not hold his index finger at maximum deviation for at least four seconds"), but such argument would at most reduce the indicia of intoxication from six to four such that the test as a whole would still indicate impairment, *see* Docket No. 29-6 at 18-19.  As also explained above, Plaintiff argues that some tests were faulty because there could have been explanations other than impairment for the identified circumstances, *see, e.g.*, Docket No. 33 at 6-7, but the existence of possible innocent explanations fails to establish a material issue of fact as to lack of probable cause.

[7] Having found no underlying constitutional violation, the Court need not address Defendants' qualified immunity argument.

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted); *see also, e.g.*, *City of Colton v. Am. Promo. Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (affirming district court's declination to exercise supplemental jurisdiction over state law claims after granting summary judgment on federal claims).

Accordingly, in its discretion, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff's state law claims are dismissed without prejudice.

## IV.    Conclusion

For the reasons discussed above, the Court **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's federal claim. In addition, the Court **DISMISSES** without prejudice Plaintiff's state law claims. The Court **INSTRUCTS** the Clerk's Office to enter judgment in favor of Defendants on the federal claim brought pursuant to § 1983, to dismiss the state law claims for false arrest and false imprisonment, and to close this case.

IT IS SO ORDERED.

Dated: June 9, 2026

_____
Nancy J. Koppe
United States Magistrate Judge